POTTSCHMIDT, Appellee,

v.

THOMAS J. KLOSTERMAN, M.D., INC. et al., Appellants.

[Cite as *Pottschmidt v. Thomas J. Klosterman, M.D., Inc.*, 169 Ohio App.3d 824, 2006-Ohio-6964.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 06CA0041–M.

Decided Dec. 29, 2006.

Steven R. Hobson II, for appellee.

Stephen J. Brown, for appellants.

Moore, Judge.

{¶ 1} Appellants, Thomas J. Klosterman, M.D., Inc., Thomas J. Klosterman, M.D., and Klosterman Family Practice, Inc. (collectively "appellants") appeal the judgment of the Medina County Court of Common Pleas in favor of appellee, Steven A. Pottschmidt, M.D. We affirm.

I

{¶ 2} In the spring of 2001, appellee, Steven A. Pottschmidt ("Dr. Pottschmidt") joined the family medical practice of appellant, Thomas J. Klosterman, M.D., Inc. ("original corporation"), a subchapter S corporation, of which appellant, Thomas J. Klosterman, M.D. ("Dr. Klosterman"), was the sole shareholder. Dr. Pottschmidt and the original corporation entered into an employment agreement with a term of one year on June 4, 2001 ("employment agreement"). The employment agreement was amended three times thereafter. The first amendment was on May 3, 2002, and served to extend the term of Dr. Pottschmidt's employment through December 2002. The second amendment was on January 28, 2003, extended the term of Dr. Pottschmidt's employment through June 30, 2003, and added a five percent management fee to the expense calculation in the employment agreement. The final amendment was dated September 16, 2003, and served to extend the term of the employment agreement until June 30, 2004. This amendment referred to a potential buy-in agreement and required Dr. Pottschmidt to provide written notice of termination of the contract depending on the number of months remaining on the employment agreement, as amended.

{¶ 3} Around the same time the employment agreement was signed, Dr. Pottschmidt entered into a salary guarantee agreement with Medina General Hospital, which contract supplemented Dr. Pottschmidt's income from his em-

ployment with the original corporation ("hospital contract"). The hospital contract was referred to in the employment agreement.

{¶ 4} On July 14, 2004, two weeks after the employment agreement expired, Dr. Pottschmidt resigned from the original corporation and in August 2004 filed suit against the original corporation. The complaint alleged a breach of the employment agreement for failure to pay Dr. Pottschmidt pursuant to the terms of the employment agreement and quantum meruit for the original corporation's failure to pay Dr. Pottschmidt for the two weeks he worked for the original corporation after the term of the employment agreement expired.

{¶ 5} In September 2004, Dr. Klosterman, upon the advice of counsel, formed Klosterman Family Practice, Inc. ("new corporation") in order to avoid liability related to Dr. Pottschmidt's employment. The new corporation continued to exist with the same employees (sans Dr. Pottschmidt) in the same offices, with the same patients, the same letterhead (with Dr. Pottschmidt's name removed), the same phone number, and the same equipment and office furniture. The new corporation opened a bank account at the same bank (First Merit) where the original corporation held an account, which account was closed in December of 2004. Some receipts from billings issued by the original corporation were deposited into the new corporation's bank account.

{¶ 6} After the formation of the new corporation, Dr. Pottschmidt amended his complaint to add the new corporation and Dr. Klosterman as parties and to assert claims for successor liability, piercing the corporate veil, and violations of the Uniform Fraudulent Transfers Act ("FTA"), R.C. 1336.01 et seq.

{¶ 7} On August 29 and 30, and September 14, 2005, this matter was tried to a magistrate who issued her decision on October 5, 2005 (the "magistrate's decision"). On October 13, 2005, appellants filed Civ.R. 53 objections to the magistrate's decision, to which Dr. Pottschmidt responded on October 21, 2005, and the appellants replied on October 28, 2005. On November 22, 2005, the trial court overruled appellants' objections and adopted the magistrate's decision in its entirety (the "judgment entry").

{¶ 8} On November 30, 2005, appellants filed a motion for a new trial and a motion for judgment notwithstanding the verdict, to which Dr. Pottschmidt responded on December 8, 2005, and the trial court denied on April 28, 2006.

{¶ 9} Appellants filed a timely notice of appeal, raising four assignments of error for our review.

## II

### ASSIGNMENT OF ERROR I

The magistrate's findings of fact and conclusions of law, which were adopted in their entirety by the trial court, were against the manifest weight of the

evidence where the court erroneuously [sic] determined that (1) appellant Klosterman M.D., Inc. had breached its employment contract with appellee Pottschmidt concerning the maximium [sic] limitation on the amount of expenses that could be deducted from cash receipts generated by appellee, and (2) Klosterman M.D., Inc. And appellee Pottschmidt had not verbally agreed to waive that maximum limitation on expenses provision of the employment contract.

{¶ 10} In their first assignment of error, appellants contend that the original corporation did not breach the employment agreement because Dr. Pottschmidt and the original corporation verbally waived section 2(D)(2) of the employment agreement. Dr. Pottschmidt contends that he did not waive this provision and could not have done so as the employment agreement at section 10 included a no-modification provision.

{¶ 11} We review whether a judgment is against the manifest weight of the evidence in a civil context utilizing the same standard of review as that used in the criminal context. *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, 1996 WL 471219, at *6. This court must, therefore, review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 12} Further, this court has stated that it "will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is based upon some competent, credible evidence that speaks to all of the material elements of the case." *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, at ¶ 18. "This standard is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent reversal." *Bell v. Joecken* (Apr. 10, 2002), 9th Dist. No. 20705, 2002 WL 533399, at *2. It is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses, view their demeanor, and weigh the evidence. *Akron v. Portman,* 9th Dist. No. 22921, 2006-Ohio-2856, 2006 WL 1540839, at ¶ 13; *DeHass,* at paragraph one of the syllabus.

{¶ 13} Pursuant to the employment agreement, Dr. Pottschmidt's monthly compensation would be equal to the difference between his monthly receipts and the corporate expenses attributed to him. Section 2(D)(2) of the employment

agreement sets forth how the corporate expenses are to be attributed between Drs. Klosterman and Pottschmidt and states:

[E]xpenses of employee will be calculated as above subject to a minimum of $3,000.00 per month and limited to a maximum amount equal to 50% of Employee's cash receipts generated for that month provided said cash receipts are in excess of $6,000 per month.

{¶ 14} The trial court found that the original corporation did not limit the corporate expenses attributable to Dr. Pottschmidt in accordance with section 2(D)(2) of the employment agreement (the "50-percent-of-receipts limitation") and that if Dr. Pottschmidt had been paid in accordance with the employment agreement, the original corporation would have paid him an additional $130,958. The trial court also held that Dr. Pottschmidt did not waive the 50-percent-of-receipts limitation.

{¶ 15} In finding that corporate expenses were not attributed to Dr. Pottschmidt in accordance with the employment agreement, the trial court relied upon testimony from Dr. Pottschmidt and Dr. Klosterman, both of whom admit that the 50-percent-of-receipts limitation was not followed and both of whom agreed as to how such expenses were to be calculated if the provision had been followed.

{¶ 16} In finding there to be no waiver of the 50-percent-of-receipts limitation, the trial court relied upon section 10 of the employment agreement ("no-modification provision"), which states:

No change or modification hereof shall be valid or binding unless the same shall be in writing and signed by the party against which such waiver is sought to be enforced.

{¶ 17} In support of his assertion that the parties waived the 50-percent-of-receipts limitation, Dr. Klosterman testified that the parties agreed to waive the provision because Dr. Pottschmidt was being reimbursed for his expenses by Medina General Hospital pursuant to the hospital contract, the terms of which Dr. Klosterman was not aware at the time of the signing of the employment agreement. However, upon cross-examination, Dr. Klosterman acknowledged that he stated in his deposition that the parties verbally waived the 50-percent-of-receipts limitation because Dr. Pottschmidt was doing so well financially. Dr. Klosterman also acknowledged that he was aware of the hospital contract at the time the employment agreement was signed and, in fact, the hospital contract is referred to therein.

{¶ 18} Appellants also assert that Dr. Pottschmidt waived his right to enforce the 50-percent-of-receipts limitation and the no-modification provision by failing to raise any issues related thereto throughout the entire term of the contractual

relationship between the parties while continuing to perform pursuant to the remaining terms of that contract.

{¶ 19} Initially, it is undisputed that there were only three signed writings between the parties subsequent to the employment agreement. None of these writings waived the 50-percent-of-receipts limitation or section 10 of the employment agreement. We also note that sections 10 and 11 of the employment agreement state that if any provision of the employment agreement is deemed waived, that waiver shall not operate as a waiver of any other provision of the contract and shall not operate as a waiver of any subsequent breach of the contract.

{¶ 20} Nonetheless, appellants cite several cases in support of their assertion that Dr. Pottschmidt waived the right to enforce the no-modification provision, which enabled him to impliedly waive the 50-percent-of-receipts limitation. Appellants cite two cases in support of their proposition.[1] The first is *Fahlgren & Swink, Inc. v. Impact Resources, Inc.* (Dec. 24, 1992), 10th Dist. No. 92AP–303, 1992 WL 385941, where the Tenth District Court of Appeals found there to be a genuine issue of material fact as to whether or not the parties waived a no-oral-modification provision by detrimentally relying on the modification. We note that *Fahlgren* is a summary judgment case decided under the summary judgment standard of whether a genuine issue of material fact existed. The case at bar was resolved by trial.

{¶ 21} The second case cited by appellants is *Frantz v. Van Gunten* (1987), 36 Ohio App.3d 96, 521 N.E.2d 506, a Third District Court of Appeals case in which the court held that evidence of additions to a contract was properly admitted at trial "since it was for the jury to determine whether or not the parties had waived the written-modification clause in the contract by clear and convincing evidence." Id. at 100, 521 N.E.2d 506.

{¶ 22} While both of these cases suggest that waiver of a no-oral-modification provision is possible, both cases also suggest that it is for the trier of fact to determine whether such a waiver occurred. Here, the trial court heard the testimony of Dr. Pottschmidt that he did not waive any provision of the employment agreement, verbally or otherwise, and that he trusted Dr. Klosterman, who calculated and allocated the expenses, to do so in accordance with the terms of the contract. Dr. Pottschmidt indicated that he only realized that Dr. Klosterman was not allocating the expenses pursuant to the employment agreement when he was presented with a new contract that deleted the 50-percent-of-receipts limitation. Mr. Cooper, appellants' accountant and attorney, testified

---

1. The other cases cited by appellants in support of this proposition are cases dealing with insurance policies and coverage and are limited to that context.

that he was not aware that the original corporation was not utilizing the 50-percent-of-receipts limitation until 2004. Ms. Boehm, who prepared the monthly receipts and expense reports, similarly testified that she was not aware of the 50-percent-of-receipts limitation.

{¶ 23} Dr. Klosterman testified that he would not have amended the employment agreement to extend the term had Dr. Pottschmidt insisted on utilizing the 50-percent-of-receipts limitation. He claims Dr. Pottschmidt failed to enforce the provision despite being presented with a receipts and expense summary sheet each month of his employment.

{¶ 24} "[A] party seeking to establish waiver bears a heavy burden of proof." *Manos v. Vizar* (July 9, 1997), 9th Dist. No. 96CA2581–M, 1997 WL 416402, at *2, citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.* (1983), 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765. We have also held in *Portman* that the trier of fact is in the best position to judge the credibility of the witnesses, view their demeanor, and weigh the evidence. *Portman*, 2006-Ohio-2856, at ¶ 13. Accordingly, we find that the trial court's decision finding a breach of the employment agreement to be supported by competent, credible evidence. We also find that the trial court's finding that the parties did not waive the 50-percent-of-receipts limitation or otherwise modify the employment agreement related to the calculation of Dr. Pottschmidt's compensation to be supported by competent, credible evidence. Appellants' first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

The trial court erred as a matter of law in determining that appellant Klosterman Family Practice, Inc. should be held liable for the obligations of appellant Klosterman, M.D., Inc. pursuant to the rule of successor liability, and its findings are against the manifest weight of the evidence.

{¶ 25} Appellants assert that the trial court erroneously found the new corporation liable for conduct of the original corporation based on the doctrine of successor liability. Dr. Pottschmidt asserts that the trial court properly followed the law set forth by the Ohio Supreme Court in the cases of *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129, and *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331, to render judgment against the new corporation.

{¶ 26} *Flaugher*, as followed by *Welco*, sets forth the controlling law in Ohio on corporate successor liability. *Dowey v. RCA Rubber Co.* (Dec. 24, 1997), 9th Dist. Nos. 18170, 18566, 1997 WL 803090, at *2. The doctrine of successor liability holds that:

[T]he buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:

(1) the buyer expressly or impliedly agrees to assume such liability;

(2) the transaction amounts to a de facto consolidation or merger;

(3) the buyer corporation is merely a continuation of the seller corporation; or

(4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Dowey*, at \*1–2, citing *Flaugher*, 30 Ohio St.3d at 62, 30 OBR 165, 507 N.E.2d 331.

{¶ 27} The trial court expressly found that the second and third exceptions, and impliedly found that the fourth exception, set forth in *Flaugher*, applied here. We agree.

A. De facto merger

■■■ A de facto merger is a merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Welco*, 67 Ohio St.3d at 349, 617 N.E.2d 1129.

[W]here the successor corporation shares significant features with its predecessor, no basis exists for treating a purchase of assets differently from a *de facto* merger.

(Emphasis sic). *Flaugher*, 30 Ohio St.3d at 65, 30 OBR 165, 507 N.E.2d 331.

{¶ 28} Appellants assert that the trial court erroneously found there to be a de facto merger between the original corporation and the new corporation. They assert that (1) the original corporation has not been dissolved, (2) there was no transfer of assets from the original corporation to the new corporation, (3) Dr. Klosterman personally assumed the liabilities of the original corporation, (4) the debts of the original corporation slightly exceeded its value, (5) as of September 2004, patients were billed by the new corporation, and (6) receivables were deposited into the new corporation's bank account as of October 1, 2004.

{¶ 29} At trial, however, evidence was presented that the new corporation took possession of the original corporation's office equipment, medical supplies, and accounts receivable. The new corporation served substantially the same patients and was operated in the same building as the original corporation. There is a single 100 percent shareholder of both corporations, Dr. Klosterman. The new

corporation pays the monthly office lease and equipment payments that the original corporation previously paid. The original corporation's employees were employed by the new corporation and were compensated by the new corporation for services rendered to the original corporation.

{¶ 30} Finally, as to the fact that the original corporation technically still exists, we have previously held that the continued existence of the transferor corporation does not defeat a claim for de facto merger except if "the transferor retains sufficient assets to satisfy the claims of its creditors." *Crislip v. Twentieth Century Heating & Ventilating Co.* (Feb. 15, 1989), 9th Dist. No. 13721, 1989 WL 11795, at *4. As has been discussed above, the original corporation retained no assets. Moreover, the original corporation closed its corporate bank account, changed the name on the profit-sharing accounts, and filed a final tax return with the IRS, which effectively constituted an end of the original corporation.

## B. Continuation

{¶ 31} The continuation theory applies when "one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation." (Citations omitted.) *Welco,* 67 Ohio St.3d at 350, 617 N.E.2d 1129. When a buyer and seller share significant features such as the same employees, a common name, or the same management, the buyer can be construed to be a mere continuation of the seller. *Flaugher,* 30 Ohio St.3d at 64, 30 OBR 165, 507 N.E.2d 331. As previously discussed, both corporations were owned and operated by Dr. Klosterman utilizing the same employees, in the same building, to serve substantially the same patients.

## C. Fraudulent transaction

{¶ 32} Finally, evidence was presented at trial that the new corporation was formed to escape liability. The new corporation was formed approximately one month after Dr. Pottschmidt filed suit. Dr. Klosterman admitted that he formed the new corporation to escape liability, although he states that his concern was not the pending lawsuit but the allegedly improper narcotics prescriptions that Dr. Pottschmidt issued before he left. Mr. Cooper, however, testified that he discussed the issue of Dr. Pottschmidt's lawsuit and claim for damages with Dr. Klosterman prior to forming the new corporation. The trial court impliedly found in its discussion of successor liability and piercing the corporate veil that the last exception to the doctrine of successor liability was proven.

{¶ 33} Based on the foregoing, we find that there was competent, credible evidence before the trial court to find that the new corporation is liable for the

tortious conduct of the original corporation. Appellants' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

The trial court erred as a matter of law by piercing the corporate veil of appellants Klosterman M.D., Inc. and Klosterman Family Practice, Inc. in order to hold appellant Dr. Klostrman [sic] personally liable to appellee in the amount of $133,511, and its findings are against the manifest weight of the evidence.

{¶ 34} Appellants assert that the trial court erroneously pierced the corporate veil of the original corporation and the new corporation to hold Dr. Klosterman personally liable to Dr. Pottschmidt.

{¶ 35} "Generally, shareholders are not liable for the debts of the corporation." *Frechette v. Kovanda* (Apr. 18, 2001), 9th Dist. No. 20207, 2001 WL 390069, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075. However, creditors of a corporation may "pierce the corporation's veil" and hold individual shareholders liable when the following three conditions are present:

[T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the Appellees from such control and wrong.

*Frechette*, at *3, citing *Belvedere*, 67 Ohio St.3d at 289, 617 N.E.2d 1075.

{¶ 36} We initially acknowledge the cases cited by appellants that a simple breach of contract is not sufficient to pierce the corporate veil. The trial court found more than a breach of contract here, however, and held that each element of the *Belvedere* test had been met, thus allowing Dr. Pottschmidt to pierce the corporate veil of the new corporation to find Dr. Klosterman personally liable for the judgment rendered. We agree.

### A. Alter Ego Doctrine

{¶ 37} The first prong of the *Belvedere* test is basically the "alter ego doctrine." See *Willoway Nurseries v. Curdes* (Oct. 13, 1999), 9th Dist. No. 98CA007109, 1999 WL 820784, at *4. In order to satisfy this requirement, a plaintiff must prove that "the individual and the corporation are fundamentally indistinguishable." *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d 1075. Some of the factors used to determine if this standard has been met include (1) whether

corporate formalities were observed, (2) whether corporate records were kept, (3) whether corporate funds were commingled with personal funds, and (4) whether corporate property was used for a personal purpose. *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 422–423, 602 N.E.2d 685; *Pikewood Manor, Inc. v. Monterrey Concrete Constr.*, 9th Dist. No. 03CA008289, 2004-Ohio-440, 2004 WL 200146, at ¶ 15.

{¶ 38} The trial court found that Dr. Klosterman had complete control over both corporations. He was the manager and sole shareholder of both entities. He wrote the paychecks, managed the retirement plan, and worked with counsel on all legal matters, including the drafting of legal documents.

{¶ 39} The record demonstrates that neither Dr. Klosterman nor either of the entities followed corporate formalities in that they did not use the corporate name either on signage or letterhead and did not consistently bill patients or insurance companies in the name of either entity, often issuing billing in the name of Dr. Klosterman, individually.

{¶ 40} Evidence in the record also establishes that the funds of each corporation and of Dr. Klosterman were commingled. Dr. Klosterman purchased an automobile, paying $24,000 in personal funds while titling the vehicle in the name of the original corporation and directing the original corporation to make the car payments and allocate the amount of the payments as income to Dr. Klosterman. The original corporation also depreciated the automobile. After the new corporation was formed, Dr. Klosterman transferred title to the vehicle into his name. Finally, some of the income earned by the original corporation was deposited into the bank account of the new corporation and some of the expenses of the new corporation were paid from the account of the original corporation. Similarly, the original corporation purchased and made payments for equipment and office furniture, which payments were subsequently made by the new corporation, despite the fact that the loan documents and rental agreements related thereto bound only the original corporation for the debt.[2]

{¶ 41} Finally, it is undisputed that the vehicle was used by Dr. Klosterman personally, although it was titled in the name of the original corporation.

B. Fraud in Disregard of the Corporate Entity

{¶ 42} It is undisputed that Dr. Klosterman formed the new corporation one month after the original corporation was sued by Dr. Pottschmidt. It is also

---

2. Dr. Klosterman testified that he personally assumed an equipment loan to First Merit in the approximate amount of $17,000; however, he also testified that the payments on the First Merit Bank loan as well as rental payments to the Klosterman Family Education Trust, the owner of other equipment and furniture used in Dr. Klosterman's practice, were being paid by the new corporation.

undisputed that Dr. Klosterman formed the new corporation to avoid potential liability related to Dr. Pottschmidt's employment with the original corporation. Finally, it is undisputed that neither the new corporation nor Dr. Klosterman paid any consideration for the assets of the original corporation. While the value of the assets of the original corporation is not clear, it is undisputed that the original corporation had some accounts receivable that were subsequently collected by the new corporation and that the original corporation possessed equipment and office furniture that is being used by the new corporation. As to the latter, Dr. Klosterman asserts that the value of the office equipment exceeded the debt thereon, which he personally assumed. The appraisal Dr. Klosterman testified that he obtained related to the equipment, however, is not a part of the record.

### C. Injury or Loss to Dr. Pottschmidt

{¶ 43} Finally, the trial court properly found that the final element of the *Belvedere* test was satisfied because the transfer of all of the original corporation's assets to the new corporation, without adequate consideration being paid, left the original corporation simply an empty shell and made it impossible for Dr. Pottschmidt to collect the judgment rendered in his favor.

{¶ 44} Based on the foregoing, we find that there was competent, credible evidence before the trial court to support a finding that the corporate veil of the new corporation has been appropriately pierced, rendering Dr. Klosterman liable for the judgment rendered in this action. Appellants' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

The trial court erred as a matter of law in determining the amount of damages to which appellee was entitled for the allegedly fraudulent transfer of assets from appellant Klosterman M.D., Inc. to appellant Klosterman Family Practice, Inc. and its findings are against the manifest weight of the evidence.

{¶ 45} Appellants assert that the measure of damages awarded to Dr. Pottschmidt is erroneous given the dictates of the FTA, which limits damages to the value of the asset transferred, i.e., the value of the original corporation. Appellants assert that the damages awarded to Dr. Pottschmidt are in excess of 50 times greater than the value of the original corporation at the time of transfer. We find this argument to be without merit.

{¶ 46} The judgment entry at paragraph 10 states that Dr. Klosterman is personally liable for the obligations of the original corporation because his actions in transferring all the assets to the new corporation constituted a fraudulent conveyance. This finding of fact relates to the fraud component at issue in the

court's analysis of successor liability and piercing the corporate veil, which allowed the court to render judgment against Dr. Klosterman personally. The damages, however, were awarded on Dr. Pottschmidt's breach of contract claim as set forth in the conclusions of law section at page two of the magistrate's report, which states that judgment should be "granted in favor of Plaintiff on his claim for breach of contract in the amount of $130,957." There is no such limitation on damages for a breach of contract claim. Appellants' fourth assignment of error is overruled.

## III

{¶ 47} There being competent, credible evidence to support the trial court's judgment entry, appellants' assigned errors are without merit. The decision of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

BOYLE, J., concurs.

SLABY, P.J., dissents.

SLABY, Presiding Judge, dissenting.

{¶ 48} I would concur with the majority's opinion as to assignments of error I, II, and IV. However, I respectfully dissent from the majority opinion as to assignment of error III. I would agree that the assets of the new corporation can be followed from the original corporation and those assets may be used to satisfy Dr. Pottschmidt's judgment; however, I disagree with the analysis the majority used to pierce the corporate veil to impose personal liability on Dr. Klosterman. The majority opinion could be used to impose personal liability on the sole shareholder of every solely owned corporation. The majority places a significant emphasis on Dr. Klosterman's personal use of an automobile paid for by the corporation. They seem to overlook the fact that these payments were treated as income to Dr. Klosterman for tax purposes, which is an indication of the separation of the corporation from the individual.

{¶ 49} The majority seems to also focus on the transfer of the assets of the new corporation to avoid liability as a prima facia case for piercing the corporate veil. There is no question that one of the purposes of the corporate structure is to avoid personal liability. The question here is whether the new corporation was established to avoid future liability or liability related to Dr. Pottschmidt's lawsuit. Here, it is clear that the litigation was commenced just prior to the formation of the new corporation. Therefore, under the limited facts of this case, I concur with the majority's opinion as to Assignments of Error I and II. Whatever the liability that existed against the original corporation should be

followed to the new corporation and the new corporation cannot avoid the liability to Dr. Pottschmidt. However, Dr. Klosterman should not be held personally liable for either corporation's liabilities.