[Cite as *Rondy & Co., Inc. v. Plastic Lumber Co.*, 2011-Ohio-5775.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RONDY & CO., INC.

    Appellee

    v.

THE PLASTIC LUMBER CO.,

    and

BRIGHT IDEA SHOPS, LLC

    Appellant

C.A. No.     25548

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 06 4893

DECISION AND JOURNAL ENTRY

Dated: November 9, 2011

BELFANCE, Presiding Judge.

{¶1}    Defendant-Appellant Bright Idea Shops, LLC ("Bright Idea") appeals the decision of the Summit County Court of Common Pleas. For the reasons stated below, we reverse.

I

{¶2}    Defendant The Plastic Lumber Company ("Plastic Lumber") was in the business of manufacturing, assembling, and selling items made from plastic lumber. Plastic Lumber was a corporation with two owners, Mr. Robbins, who held a 95% interest, and a second owner with a 5% interest. In 2008, Plastic Lumber began seeking refinancing of its outstanding debt. After Huntington National Bank ("Huntington") purchased Sky Bank, Huntington became the secured party obligee on Plastic Lumber's debt, holding a blanket lien on all of Plastic Lumber's assets ("the collateral"). The loan obligations were also guaranteed by Mr. Robbins.

{¶3} By December 2008, Plastic Lumber had defaulted on its obligations to Huntington. Notwithstanding, Plastic Lumber continued to operate. In early 2009, Plastic Lumber ordered $37,833.72 worth of materials used to manufacture lumber board from Plaintiff-Appellee Rondy & Company, Inc. ("Rondy"). At Huntington's urging, Plastic Lumber engaged the services of a consultant group to act as a restructuring officer as it continued to evaluate the potential refinancing of the debt. Ultimately, Huntington declined to refinance Plastic Lumber's debt. In light of Plastic Lumber's default, Huntington pursued a surrender and liquidation of Plastic Lumber's assets and the restructuring officer became a liquidating officer.

{¶4} On June 30, 2009, Plastic Lumber entered into a liquidation, voluntary surrender and release agreement ("the agreement") with Huntington due to Plastic Lumber's default on loan obligations with Huntington, which amounted to $840,708.39 at the time. Plastic Lumber and Huntington agreed to commence an orderly liquation of the collateral. In furtherance of the orderly liquidation, and as part of the agreement, Mr. Robbins or his "third part[y] designee" agreed to acquire $238,650 worth of assets described in an exhibit to the agreement ("the acquired assets"), and Mr. Robbins agreed to guaranty the obligation. Mr. Robbins formed Bright Idea and became its president and sole member. Bright Idea was created to assemble and sell items made from plastic lumber, but unlike Plastic Lumber, it was not a manufacturer of plastic lumber. Bright Idea purchased the acquired assets, and Mr. Robbins, on behalf of Bright Idea, signed a promissory note for $238,650 financed by Huntington. In addition, Bright Idea purchased $101,361 of Plastic Lumber's inventory. Additional assets were purchased by third parties. Only the liquidating officer, in conjunction with Huntington, determined the acceptable price and approved the transactions for the sale of the assets. The remaining assets were sold at auction. Bright Idea bought approximately $9,000 to $10,000 worth of items from the auction.

In total, the assets of Plastic Lumber netted approximately $500,000, approximately $350,000 of which was purchased by Bright Idea through the agreement, the purchase of inventory, and the purchase at auction. As part of the agreement, Plastic Lumber agreed to cease business operations no later than June 30, 2009.

{¶5} On June 30, 2009, Rondy sued Plastic Lumber for breach of contract and account asserting $37,833.72 in damages based upon Plastic Lumber's failure to pay for the materials it had ordered. Rondy amended its complaint to add Bright Idea as a defendant, alleging Bright Idea was liable for the debt of Plastic Lumber. Bright Idea moved for summary judgment on the claim against it; however, its motion was subsequently denied. The matter proceeded to a bench trial. The parties agreed to have judgment entered against Plastic Lumber for $37,833.72. Thus, the only issue to be determined at trial was whether Bright Idea was liable for the $37,833.72 debt.

{¶6} The trial court concluded that it was and found that "Bright Idea continued [Plastic Lumber's] business through a de facto merger or a mere continuation of [Plastic Lumber], and is therefore liable for the $37,833.72 obligation to [Rondy]."

{¶7} Bright Idea has appealed raising a single assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR

"The trial court erred as a matter of law in determining that appellant Bright Idea Shop, LLC, should be held liable for the obligations of Plastic Lumber Company[,] Inc. pursuant to the 'defacto merger' and 'mere continuation' exceptions to the general rule of no successor business liability, and its findings are against the manifest weight of the evidence."

{¶8} Bright Idea asserts that the trial court committed legal error in concluding that the de facto merger and mere continuation exceptions applied to Bright Idea. While Bright Idea also

states in its assignment of error that the trial court's "findings" are against the manifest weight of the evidence, it does not articulate which findings it believes are against the manifest weight of the evidence. See App.R 16(A)(7). In fact, it appears that Bright Idea generally agrees with the trial court's findings of fact, but instead believes that the trial court erred in its application of the law to those facts.

{¶9} "The well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346-347 citing *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60. The Supreme Court of Ohio has identified four well recognized exceptions to the general rule barring successor liability. In *Welco*, the Supreme Court held that:

> "A corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Welco,* 67 Ohio St.3d at syllabus.

{¶10} In the instant matter, the trial court found that both the de facto merger and mere continuation exceptions applied, and therefore, that Bright Idea was liable for the debts of Plastic Lumber. As we conclude neither exception applies, we likewise conclude that the general rule barring successor liability also applies.

**De Facto Merger**

{¶11} "A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." Id. at 349. It is a:

"merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." Id.

"One court has indicated that a transfer of assets for stock is the sine qua non of de facto merger." Id. In light of the evidence presented at trial, we conclude that the trial court erred in concluding that the de facto merger doctrine was applicable.

{¶12} We begin by noting that the transaction at issue was not "in the nature of a total absorption of the previous business into the successor[,]" and thus does not even seem to fit within the general definition of a de facto merger as defined by the *Welco* Court. Id. In addition, the only element of the four listed above that was established by the evidence is "the rapid dissolution of the predecessor[.]" Even Rondy acknowledges in its brief that all of the hallmarks of a de facto merger are not present. Notably, the "sin qua non[,]" the transfer of assets for stocks, was not present in this transaction. Id. Further, all of Plastic Lumber's business activities were not continued and there was no evidence presented that Bright Idea assumed "all liabilities and obligations ordinarily necessary to continue [Plastic Lumber's] business operations." Id. Accordingly, we cannot say the de facto merger exception applies in light of the evidence presented at trial.

**Mere Continuation**

{¶13} Notwithstanding the inapplicability of the de facto merger exception, the trial court also concluded that Bright Idea is liable for Plastic Lumber's debt under the "mere continuation" exception to successor liability. In *Welco*, the Supreme Court of Ohio was presented with the opportunity to adopt an expanded view of the mere continuation exception,

but declined to do so. Id. at 348. The expanded mere continuation exception involves imposing liability if the two corporations have significant shared features. See id. at 347-348. The Court revisited *Flaugher*, 30 Ohio St.3d 60, and concluded that:

> "[t]he concerns for predictability and free transferability in corporate acquisitions that led this court to decline to expand the test for tort successor liability in *Flaugher* are even more compelling where the claim is in contract. To expand the mere-continuation exception to a contractual claim would virtually negate the difference between an asset purchase and a stock purchase. Courts would be forced to look beyond the surface of any asset purchase to determine the extent of shared features between predecessor and successor in order to decide whether liability should attach to contractual obligations that were explicitly excluded from the transaction. The sale of a corporation's assets is an important tool in raising liquid capital to pay off corporate debts. A court-imposed expansion of contractual liability of successor corporations beyond the traditional exceptions would unnecessarily chill the marketplace of corporate acquisitions. For these reasons, we decline to expand the traditional exceptions to the general rule of nonliability of successor corporations[.]" *Welco,* 67 Ohio St.3d at 348-349.

{¶14} Thus, under current binding Supreme Court precedent, the mere continuation exception is limited and narrow. The basis of the mere continuation exception "is the continuation of the corporate entity, not the business operation, after the transaction." Id. at 350. "Such would be the case when one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization." (Internal quotations and citation omitted.) Id. "This type of transaction is executed to escape liabilities of the predecessor corporation." Id. Thus, "inadequacy of consideration is one of the indicia of mere continuation." Id.

{¶15} As an initial matter, we note that Rondy's arguments at trial were premised upon the notion that there was in fact a sale of assets from one corporation to another. However, in this case, there was not a sale of assets from corporation to corporation and the facts of the instant matter are quite distinguishable from those of either *Flaugher* or *Welco,* which did

involve sales of assets between two corporations. Unlike either of the two Supreme Court cases, this case does not involve the sale of Plastic Lumber's assets to its successor. Instead, Plastic Lumber surrendered its assets to its secured creditor, Huntington, in order to avoid having to file for bankruptcy. The following facts are undisputed: (1) Huntington was a secured party that held a valid blanket lien on Plastic Lumber's assets; (2) Huntington instructed Plastic Lumber to hire a restructuring agent, who ultimately became a liquidating agent, so that Huntington might realize the most money possible from the sale of Plastic Lumber's assets; (3) Huntington was entitled, as the secured creditor, to proceed in the manner it did; (4) the assets of Plastic Lumber that Bright Idea acquired were acquired through the third party agent and from Huntington; and (5) the assets were sold for fair and reasonable price given the nature of the assets and the circumstances under which they were sold.

{¶16} In light of the undisputed facts, the indicia necessary to satisfy the mere continuation exception are not present. There was no evidence presented which suggested that Bright Idea purchased the assets of Plastic Lumber for inadequate consideration, or that the transaction was conducted to escape the liabilities of Plastic Lumber. See *Welco*, 67 Ohio St.3d at 350. On the contrary, the record evidences that the purpose of selling the assets through a restructuring/liquidating agent was to procure the best possible price for the assets for the secured creditor, Huntington. Mr. Robbins' testimony indicates that Bright Idea's purchase of assets prior to auction likely garnered Huntington more money than if the assets had been auctioned. Accordingly, it is difficult to conclude that Bright Idea purchased the assets for inadequate consideration, particularly when Mr. Robbins' testimony was unrefuted.

Moreover, because this was not a corporation to corporation acquisition, this is not a situation described in *Welco* in which "one corporation sells its assets to another corporation with

the same people owning both corporations" and "the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation." See id. at 350. Accordingly, we cannot say that Bright Idea was a mere continuation of Plastic Lumber.

{¶17} The trial court and the parties in this matter found our decision in *Pottschmidt v. Klosterman*, 169 Ohio App.3d 824, 2006-Ohio-6964, to be dispositive. We, however, conclude *Pottschmidt* is entirely distinguishable on its facts. In *Pottschmidt* the original corporation was solely owned by Dr. Klosterman. Id. at ¶2. After the original corporation was sued by one of its employees, Dr. Pottschmidt, Dr. Klosterman formed a new company, which he also solely owned, for the purpose of avoiding liability related to Dr. Pottschmidt's employment. Id. at ¶¶2-5, 29, 31. "[T]he new corporation took possession of the original corporation's office equipment, medical supplies, and accounts receivable." Id. at ¶29. "[N]either the new corporation[,] nor Dr. Klosterman[,] paid any consideration for the assets of the original corporation." Id. at ¶42. The facts of *Pottschmidt* clearly fall within the narrow mere continuation exception articulated in *Welco*. See *Welco,* 67 Ohio St.3d at 350 ("This type of transaction is executed to escape the liabilities of the predecessor corporation. * * * Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation.").

{¶18} Nonetheless, even though the facts of *Pottschmidt* fall within the narrow mere continuation exception stated in *Welco*, it is evident in this case that the trial court applied the expanded mere continuation exception in its analysis. In *Pottschmidt* at ¶31, citing *Flaugher*, 30 Ohio St.3d at 64, this Court stated that "[w]hen a buyer and seller share significant features such as the same employees, a common name, or the same management, the buyer can be construed to be a mere continuation of the seller." To the extent that this language implies the adoption by

this Court of the expanded mere continuation exception rejected by the Supreme Court in *Welco*, we disavow it, and hold that the language has no applicability to the consideration of the mere continuation exception to successor liability.

{¶19} Thus, in light of the particular facts of the case, we cannot say that the mere continuation exception applies. Accordingly, Bright Idea's argument has merit.

III.

{¶20} In light of the foregoing, we sustain Bright Idea's assignment of error, and reverse the decision of the Summit County Court of Common Pleas.

Judgment reversed
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

                                                _____

EVE V. BELFANCE
FOR THE COURT


WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

JOHN W. MYGRANT and HOWARD E. MENTZER, Attorneys at Law, for Appellant.

MARK W. BERNLOHR and SARAH B. BAKER, Attorneys at Law, for Appellee.