[Cite as *Health Carousel Travel Network, L.L.C. v. Alecto Healthcare Servs. Wheeling, L.L.C.*, 2024-Ohio-4599.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HEALTH CAROUSEL TRAVEL NETWORK, LLC, | : | APPEAL NO. C-230537 TRIAL NO. A-1903955 |
| | : | |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| | : | |
| vs. | : | |
| ALECTO HEALTHCARE SERVICES WHEELING, LLC, et al., | : | |
| Defendants, | : | |
| and | : | |
| EAST OHIO HOSPITAL, LLC, | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: September 20, 2024

*Reardon & Chasar, LPA, Matthew R. Chasar* and *Joseph M. Sprafka*, for Plaintiff-Appellant,

*Bonezzi Switzer Polito & Perry Co. LPA, Thomas F. Glassman* and *Patricia J. Trombetta*, for Defendant-Appellee.

**KINSLEY, Judge.**

**{¶1}** Plaintiff-appellant Health Carousel Travel Network, LLC ("Health Carousel") appeals from the judgment of the Hamilton County Court of Common Pleas awarding summary judgment to defendant-appellee East Ohio Hospital, LLC ("EOH"), on Health Carousel's complaint for successor liability for unpaid invoices. For the following reasons, we affirm the judgment of the trial court.

### *Factual and Procedural Background*

**{¶2}** This action arises out of a dispute between Health Carousel, a provider of temporary healthcare staffing services, and EOH, an entity which reopened East Ohio Hospital after its previous ownership—Alecto Healthcare Services Wheeling, LLC d.b.a Ohio Valley Medical Group d.b.a East Ohio Regional Hospital ("Alecto")—closed down the facility. In essence, Health Carousel claims that EOH is liable for staffing invoices that Alecto never paid.

**{¶3}** Health Carousel initially sued Alecto in 2019 for both the $93,110.57 that was outstanding on the account and for unjust enrichment. But on May 14, 2020, before Health Carousel's lawsuit against Alecto was resolved, Alecto entered into an asset-purchase agreement under which EOH purchased some, but not all, of its assets.[1]

**{¶4}** Nearly a year later, on April 9, 2021, Health Carousel filed its first amended complaint to add EOH as a defendant and to include a claim for successor liability.[2] In its first amended complaint, Health Carousel outlined the circumstances under which it alleged that EOH reopened the hospital. First, Health Carousel alleged Alecto closed the hospital and ceased operations in September 2019. Health Carousel

---

[1] Notably, the asset-purchase agreement excluded Alecto's accounts receivable, specified Medicare and Medicaid payments from the government, pension benefits, employee records, and other business documents.
[2] Health Carousel later amended its complaint a second time to add a claim against Alecto seeking to pierce the corporate veil.

described EOH as Alecto's landlord and indicated that EOH acquired the hospital from Alecto. As a result, Health Carousel alleged that EOH and Alecto had engaged in a de facto merger. Second, Health Carousel alleged that EOH purchased Alecto's assets, was using the same trade name, had paid certain liabilities owed by Alecto, and continued the employment of certain former Alecto employees. On this basis, it contended that EOH was essentially a continuation of Alecto's business. Health Carousel's successor liability claim against EOH thus rested on two theories: de facto merger and business continuation.

{¶5} In its answer, Alecto conceded that it owed Health Carousel $93,110.57. Alecto also conceded in interrogatory responses that it owed the money. But Alecto took the position that, because it was out of business, it lacked the financial resources to pay the claim.

{¶6} In its answer, EOH disputed that it was responsible for Alecto's debt to Health Carousel. It claimed to be wholly owned and operated by Dr. John Johnson and disputed merely continuing Alecto's business operations. It conceded that one former Alecto employee was in fact employed by EOH but denied that this established a de facto merger. EOH crossclaimed against Alecto for contribution and indemnification in the event it was found liable to Health Carousel.

{¶7} Both EOH and Health Carousel sought partial resolution of the case by way of summary judgment. For its part, Health Carousel moved for summary judgment against Alecto on the basis of its admission that it owed the outstanding invoices. EOH, on the other hand, filed for partial summary judgment against Health

3

Carousel on its successor liability claim.[3]  In its motion, EOH asserted that Health Carousel had failed to sufficiently prove its de facto merger and business continuation theories of successor liability.

**{¶8}**  On March 7, 2023, the trial court granted Health Carousel's motion for partial summary judgment against Alecto, finding no genuine issue of material fact that Alecto owed Health Carousel the unpaid money.

**{¶9}**  That same day, the trial court also granted EOH's motion for partial summary judgment.  Its entry noted Alecto's admission that it had not paid the balance of $93,110.57 to Health Carousel but acknowledged that Alecto lacked sufficient assets to satisfy the debt.  This was because, as the entry further explained, Alecto sold its assets to EOH while the lawsuit was pending.

**{¶10}**  The trial court therefore considered whether EOH was liable to Health Carousel under a theory of successor liability.  In doing so, it analyzed the matter under *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344 (1993), which acknowledged the general rule that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller.  *Id.* at 346-347.  *Welco* then established four exceptions to the general rule: (1) express or implied liability; (2) de facto merger; (3) mere continuation; and (4) fraud.  *Id.* at 347.

**{¶11}**  With regard to express or implied liability, the trial court examined the asset-purchase agreement between EOH and Alecto.  It read the agreement to hold Alecto liable for its debts unless the agreement specifically provided for transfer of liability to EOH.  The trial court did not find the outstanding invoices owed to Health

---

[3] The motion was partial in the sense that it pertained only to Health Carousel's claim against EOH. If granted, EOH's summary judgment motion would not resolve Health Carousel's claims against Alecto, nor would it resolve EOH's indemnification crossclaim against Alecto.

Carousel to have shifted from Alecto to EOH under the agreement. Accordingly, the trial court held that the asset-purchase agreement expressly foreclosed liability on the part of EOH.

{¶12} The trial court further found that no de facto merger occurred. It based its conclusion on the lack of common corporate personnel between Alecto and EOH, the two-year period that the hospital was closed, the fact that the one common employee of the corporations had relocated to Arizona while the hospital was closed, and the absence of evidence of the sale of assets for stock. It also noted that Alecto had not rapidly dissolved.

{¶13} Regarding mere business continuation, the trial court was unconvinced that EOH was the reincarnation of Alecto. It relied upon evidence that there was no ongoing relationship between the two corporations and that Dr. John Johnson, who had no known relationship to Alecto, was the sole member of EOH. The trial court also credited Alecto's continued existence as evidence that the asset purchase was not a mere continuation of Alecto.

{¶14} Finally, the trial court observed that Health Carousel had not argued fraud as a basis for successor lability.

{¶15} Ultimately, the trial court found that there was no genuine issue of material fact as to EOH's status and that the de facto merger and business continuation theories had not been proven as a matter of law. It therefore granted EOH's motion for partial summary judgment. It later amended its order to indicate that its decision as to EOH constituted a final appealable order under Civ.R. 54(B).

{¶16} Health Carousel now appeals.

### *De Facto Merger and Mere Continuation*

**{¶17}** In its sole assignment of error, Health Carousel argues that the trial court erred in granting EOH's motion for partial summary judgment. Specifically, Health Carousel asserts that a genuine issue of material fact exists under the theories of de facto merger and mere continuation.

**{¶18}** Before addressing Health Carousel's argument, we pause to resolve an issue raised by EOH regarding the status of the record. EOH contends that transcripts of three depositions—those of (1) Dr. John Johnson, (2) the one common officer employed by both EOH and Alecto, and (3) an attorney who served as the executive vice president and secretary of Alecto—cannot be considered because they were not properly before the trial court when it ruled on EOH's summary judgment motion. We disagree.

**{¶19}** The deposition transcripts were filed in the trial court on October 31, 2022, approximately five months before the trial court issued its summary judgment decision. Because they were timely made a part of the trial court record, we may consider them on appeal. *See King v. Niswonger*, 2014-Ohio-859, ¶ 11 (2d Dist.) (holding that where the deposition transcript was a part of the trial court's proceedings, the transcript is a part of the record on appeal).

**{¶20}** Summary judgment decisions are reviewed de novo. *Al Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, ¶ 13 (1st Dist.). Summary judgment is proper under Civ.R. 56(C) where "(1) no genuine issue of material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to

the party against whom the motion for summary judgment is made." Civ.R. 56(C); *see id.* at ¶ 14. The moving party has the initial burden of informing the court of the basis for the motion and identifying the portions of the record that set forth specific facts demonstrating entitlement to summary judgment. *Al Neyer* at ¶ 15. If the moving party fails to meet its burden, summary judgment is not appropriate. *Id.*

{¶21} The general rule of successor liability is that a purchaser of a corporation's assets it not liable for its debts. (Cleaned up.) *Welco*, 67 Ohio St.3d at 346-347. There are four exceptions:

(1) the buyer expressly or impliedly agrees to assume such liability;

(2) the transaction amounts to a de facto consolidation or merger;

(3) the buyer corporation is merely a continuation of the seller corporation; or

(4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Id.* at 347.

{¶22} Health Carousel argues that the trial court erred in rejecting its theories under the second and third exceptions. It does not challenge the trial court's finding that EOH did not expressly or impliedly agree to assume Alecto's debt to Health Carousel. We therefore consider the de facto and business continuation exceptions in the context of the evidence the parties developed below.

### A. *De Facto Merger*

{¶23} Health Carousel argues that a genuine issue of material fact existed as to whether there was a de facto merger between Alecto and EOH.

{¶24} A de factor merger occurs when there is essentially a total absorption of a dissolved corporation into a business successor. *Welco*, 67 Ohio St.3d at 349. It is essentially a merger in fact in the absence of an official declaration that the two corporations merged. *Id.* The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. *Id.*

{¶25} Not all hallmarks must be present to determine that a de facto merger exists. *Eberhard Architects, LLC v. Schottenstein, Zox & Dunn Co., LPA*, 2015-Ohio-2519, ¶ 23 (8th Dist.). The touchstone is whether the predecessor corporation has in effect been totally absorbed into the successor corporation. *See Welco*, 67 Ohio St.3d at 349. To this end, a transfer of assets for stock is the quintessential sign that a de facto merger has taken place. *Aluminum Line Prods. Co. v. Brad Smith Roofing Co.*, 109 Ohio App.2d 246, 265 (8th Dist. 1996).

{¶26} Against this backdrop, courts examining the hallmarks of a de facto merger have typically focused on commonality of ownership as a threshold consideration. *See, e.g., Strawser v. Holter-Hausner Internatl., Inc.*, 1991 Ohio App. LEXIS 5480, *9-10 (10th Dist. Nov. 14, 1991) (relying on fact that predecessor and successor corporations had separate ownership and officers as basis for rejecting de facto merger theory). For example, where a physician established a successor corporation to essentially absorb his old practice after his business partner departed, the court found a de facto merger to have occurred. *See Pottschmidt v. Klosterman*,

2006-Ohio-6964, ¶ 29 (9th Dist.). But where there is a lack of common ownership and leadership, among other differences between the two corporations, courts are much less likely to determine that the predecessor and successor corporations engaged in a de facto merger. *See, e.g., Kasandra v. Nelson Tree Serv.*, 2001 Ohio App. LEXIS 4578, *18 (5th Dist. Sept. 25, 2001).

{¶27} Considering the ultimate question as to whether Alecto was totally absorbed into EOH through the lens of the de facto merger hallmarks, we agree with the trial court that there was not a de facto merger of the two corporations. At the outset, we emphasize the lack of common ownership between Alecto and EOH, the exclusion of certain valuable assets from the transaction including accounts receivable, and the passage of time between Alecto's closure of the hospital and the asset-purchase agreement. Approximately eight months elapsed between the time when Alecto went out of business and when EOH purchased the bulk of its assets. And this was clearly not a sale of assets for stock. While these facts alone do not eliminate the possibility of a de facto merger, they are more indicative of an arms-length transaction for the sale of parts of a defunct corporation than of a reincarnation of one corporation into another.

{¶28} Regarding the first hallmark of a de facto merger, Health Carousel contends that the material facts regarding the continuation of the previous business activity and corporate personnel are in dispute. But the record reveals otherwise. As reflected in the deposition transcripts, Alecto and EOH employed only one officer in common, and that person left Alecto prior to the negotiation of the asset-purchase agreement. The individual also moved to Arizona for two years between working for Alecto and EOH. Of the day-to-day employees working at the hospital, some returned

to EOH after Alecto closed the facility, but some were hired by EOH from other sources with no previous work history at Alecto.

{¶29} With regard to the continuation of Alecto's business activity, it is true that EOH reopened the hospital that Alecto closed. It did so using some of the assets that it purchased from Alecto, including the building, medical equipment, and computer software licenses. But the record further reveals that EOH needed to purchase additional assets to successfully reopen and that it offered different services at the hospital than Alecto had previously. Thus, while the business activity continued in a similar fashion, it did not continue identically.

{¶30} As to the third hallmark, Health Carousel argues that Alecto sufficiently dissolved to support a conclusion of de facto merger. It is true under Ohio law that a constructive dissolution satisfies the third hallmark, even if the corporation has not filed official articles of dissolution with the secretary of state. *See Pottschmidt v. Klosterman*, 2006-Ohio-6964, ¶ 30 (9th Dist.). A company can constructively dissolve by retaining no assets, closing its bank account, changing its name on any other financial accounts, and filing a final tax return with the IRS. *Id.* The record lacks evidence that this occurred with respect to Alecto. While it closed the hospital in 2019 and lacked sufficient assets to satisfy its debts, we have nothing before us to support Health Carousel's unsubstantiated claims that it constructively dissolved. To the contrary, Alecto existed as an active corporation from July 7, 2020, until June 21, 2022. Nothing suggests that it took actions to dissolve its business by closing its accounts and filing final returns during that time.

{¶31} Regarding the fourth hallmark, Health Carousel argues that EOH assumed the liabilities of Alecto. To support this conclusion, Health Carousel

specifically points to the fact that EOH directed some of its payments under the asset-purchase agreement to a separate entity rather than to Alecto. EOH did indeed make payments to MPT of Martins Ferry Alecto, LLC ("MPT") the owner of the real property on which the hospital is located. But the asset-purchase agreement specifically contemplated payment to MPT as consideration for the purchase of real property, rather than as the assumption of debt. The record therefore does not reflect that EOH paid MPT because it assumed Alecto's debts to that entity.

{¶32} Moreover, the asset-purchase agreement itself reveals that EOH did not assume "all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *See Welco*, 67 Ohio St.2d at 349. To be sure, EOH expressly agreed to take on some of Alecto's debts, including those owed by Alecto to Medicare and Medicaid, those necessary to retain certain medical records, and those necessary to facilitate the real-estate transfer, including real-estate taxes. But the asset-purchase agreement specifically disclaimed EOH's assumption of any liability not specifically set forth in the agreement, including those debts Alecto owed for its previous operation of the hospital. It is therefore not the case that EOH assumed all debts necessary to continue Alecto's business operations as they were before the hospital closed, given that the asset-purchase agreement specifically excluded operational debt.

{¶33} Importantly, Health Carousel points to no evidence in the record that would dispute any of the material facts related to the de facto merger hallmarks. Rather, it argues that it could develop additional facts if given the opportunity to try the case. But that is not the standard. As the nonmoving party, Health Carousel must point to specific evidence in the record upon which the trier of fact could reasonably

rule in its favor at trial. *Campbell Oil Co. v. Shepperson*, 2006-Ohio-1763, ¶ 26 (7th Dist.). In this instance, it failed to do so.

**{¶34}** The portion of Health Carousel's assignment of error arguing that there existed a genuine dispute of material fact as to whether EOH and Alecto engaged in a de facto merger is accordingly overruled.

### B. Mere Continuation

**{¶35}** Health Carousel next argues that the trial court erred in finding no genuine issue of material fact that EOH was a mere continuation of Alecto.

**{¶36}** As the Ohio Supreme Court has explained, commonality of ownership is also an important consideration in determining whether one business entity is merely the continuation of another. *Welco*, 67 Ohio St.2d at 350. Where there is common ownership, the successor corporation is merely a "new hat" or "reincarnation" of its predecessor. *Id.* Typically, this type of transaction is used to defeat or escape liabilities of the predecessor corporation. *Id.* Thus, inadequacy of consideration is one of the indicia of the mere continuation exception to the bar on successor liability. *Id.*

**{¶37}** Factors to consider in reviewing whether a successor corporation merely continues the business of a previous corporation are whether the new corporation shares common owners or directors, whether the new corporation consists solely of the assets of the old corporation, and whether the old corporation continued to exist as a viable business after the asset transfer. *Kuwatch v. Klimat Master Contrs.*, 1993 Ohio App. LEXIS 5121, *8-9 (1st Dist. Oct. 27, 1993), citing *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St.3d 60 (1987).

**{¶38}** The record reveals no disputed facts as to these criteria. Regarding corporate ownership and leadership, EOH and Alecto were separately owned. The corporations had only one officer in common, and that individual had left Alecto for a two-year stint in Arizona before the asset-purchase agreement was negotiated. Regarding EOH's assets, the record reflects that it was not entirely comprised of property purchased from Alecto. To the contrary, EOH purchased new software licenses and medical equipment while also using Alecto's same location and phone number. Regarding Alecto's dissolution, Alecto did not immediately dissolve after the hospital shut down, although it did discontinue providing medical services. Critically, there was also a gap of about two years between Alecto's closure of the hospital and EOH's reopening. It is difficult to envision one business merely being continued as another given such a long gap in business operations.

**{¶39}** Health Carousel also raises questions about the adequacy of the consideration that EOH paid for Alecto's assets. It alleges that, in the absence of an appraisal conducted by the parties, the purchase price could not have been adequate. But this is mere speculation in the absence of actual evidence to show that EOH underpaid for what it obtained. We resolve summary judgment questions on the basis of the facts in the record, not on the basis of conjecture. *Carroll v. Alliant Techsystems, Inc.*, 2006-Ohio-5521, ¶ 17 (10th Dist.) ("Speculation and conjecture, however, are not sufficient to overcome appellant's burden of offering specific facts showing there is a genuine issue for trial.").

**{¶40}** The undisputed facts include the hospital's two-year closure, the purchase of additional licenses and equipment by EOH, the continued existence of Alecto during EOH's reopening, and the different ownership structures of the two

corporations. As such, this is not a case in which one corporation merely reopened as another for the purpose of avoiding debt.

**{¶41}** Insofar as it argues that EOH was a mere continuation of Alecto, Health Carousel's assignment of error is overruled.

### *Conclusion*

**{¶42}** The trial court did not err in awarding partial summary judgment to EOH on Health Carousel's successor liability claim. No genuine dispute of material fact exists as to whether EOH engaged in a de facto merger with Alecto or constituted the mere continuation of Alecto. As a result, we overrule Health Carousel's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.