### In re ESTATE OF DAWSON.

[Cite as *In re Estate of Dawson* (1996), 117 Ohio App.3d 51.]

Court of Appeals of Ohio,
Second District, Drake County.

No. 1407.

Decided Dec. 27, 1996.

*Randolph J. Bernard* and *David W. Reid,* for appellant Rosemary Rogers, executor.

*Larry G. Crowell,* for the estate of Catherine Dawson.

*John A. Wannemacher,* for James Dawson and Shirley Anderson.

FAIN, Judge.

Executor-appellant, Rosemary Rogers, appeals from a decision of the probate court denying payment of attorney fees, incurred during the administration of estate, from estate assets. The probate court based its holding upon a finding that the "hiring of attorneys was adverse to the estate," and was for the benefit of the executor personally.

We conclude that the probate court abused its discretion by denying attorney fees that were incurred for appropriate administration of estate. The judgment of the probate court is reversed, and this cause is remanded for determination of reasonable attorney fees.

I

During her lifetime, Catherine F. Dawson entered into an antenuptial agreement with Charles Dawson, deceased. The agreement contained provisions requiring the mutual creation of wills and obligated Charles Dawson to execute a will in which his entire estate was placed in a trust. Under the terms of the

agreement, Catherine Dawson was given the use and benefit of the trust assets and Charles Dawson's home until her death or remarriage. The antenuptial agreement further provided that, upon Catherine Dawson's death, the corpus of the trust was to be distributed in equal shares among Charles Dawson's children, appellees James Dawson and Shirley Anderson. The antenuptial agreement also required Catherine Dawson to execute a will devising her entire estate to James and Shirley. In 1979, the parties executed the appropriate wills and were subsequently married.

Charles Dawson died in 1985. After his death, Catherine Dawson executed a new will in February 1990. Catherine died in December 1990, and the will she had executed that year was admitted to probate. Pursuant to that will, appellant Rosemary Rogers was appointed executor of the estate of Catherine Dawson. The will further provided for the distribution of Catherine Dawson's estate as follows: one-third to James Dawson, one-third to Shirley Anderson, and one-third to be divided between Catherine's five nieces and nephews, including Rogers.

In April 1991, James Dawson filed a proof of claim against Catherine's estate claiming entitlement to the portion of the estate to be distributed to him pursuant to the antenuptial agreement. The claim was deemed rejected in March 1992. Thereafter, James filed a complaint regarding the rejected claim in the Darke County Probate Court. The probate court dismissed the complaint for lack of subject-matter jurisdiction. James and Shirley then filed a complaint to enforce the antenuptial agreement in the Civil Division of the Darke County Court of Common Pleas. Rogers, as executor, hired the law firm of Coolidge, Wall, Womsley & Lombard to represent her, as executor, in regard to the complaint. That law firm was paid by the estate. Rogers, along with the other named beneficiaries (Catherine's other nieces and nephews) hired attorney James Fullenkamp as counsel to represent their individual interests, as beneficiaries, in regard to the complaint. Attorney Fullenkamp was paid by the beneficiaries, not the estate.

James and Shirley filed a motion for summary judgment. In overruling the motion, the Civil Division of the Darke County Court of Common Pleas found the antenuptial agreement to be silent as to "whether modification of the agreement or of [Charles and Catherine's] wills was permissible and if so how it was to be effectuated." The entry also stated that the testimony of the attorney who drafted the antenuptial agreement and the 1979 wills would be "required to ascertain not only the intent of the parties at the time the antenuptial agreement was executed by [Charles and Catherine] but also whether a modification occurred shortly thereafter."

The parties took the deposition of the attorney who drafted the antenuptial agreement. Some time after the deposition, the parties learned that the original

antenuptial agreement was on file with the Montgomery County Probate Court. Thereafter, the Darke County Court of Common Pleas, Civil Division, entered a judgment in favor of James and Shirley, and ordered Rogers to distribute the balance of the estate in the manner required by the agreement. Rogers did not appeal from that order, and distributed the estate in accordance, with the agreement.

Rogers subsequently filed a final account for Catherine's estate with the probate court. On January 16, 1995, James and Shirley filed exceptions to the account. The exceptions claimed that the total of $12,532.58 paid to Coolidge, Wall, Womsley & Lombard, hired by Rogers as executor, was improper. The parties entered into eight stipulations in regard to the exceptions, which read in pertinent part as follows:

"(1) That the * * * Judgment Entry rendered by the Common Pleas Court of Darke County, Case No. 52956, * * * found that the antenuptial agreement between [Catherine] and her former husband, Charles A. Dawson, was valid, and that [Catherine] breached the agreement by leaving ⅓ (one-third) of her estate to her nephews and nieces in her Will in the Case at bar.

"(2) That James Dawson and Shirley Anderson are beneficiaries under the will of Catherine F. Dawson.

"(3) Rosemary Rogers is both a fidiciary [sic], the Executor and a beneficiary under Item III(C) of [Catherine's] Will.

"(4) Rosemary Rogers and the other individuals set out in Item III(C) are beneficiaries of the provision held to be in violation of the antenuptial agreement.

"(5) The total of the fees paid by the Estate to Coolidge, Wall, Womsley & Lombard to defend Defendant, Rosemary Rogers in both the action initiated in this Court and in Case No. 52956 amount to $10,647.43. The total costs, including Court reporting fees, paid by the Estate amount to $1,185.15.

"(6) Coolidge, Wall, Womsley & Lombard was hired by Rosemary Rogers, as Executrix, to represent her in the causes of action brought by James Dawson and Shirley Anderson for the rejection of the claim based on the above mentioned antenuptial agreement.

"(7) The total gross assets of the Estate were not affected by the determination that Decedent, Catherine F. Dawson's Will was in violation of the antenuptial agreement.

"(8) Larry G. Crowell is the Attorney of Record for the administration of the Estate of Catherine F. Dawson."

The probate court entered a judgment finding that "Rosemary Rogers' hiring of attorneys was adverse to the estate of Catherine F. Dawson and to her benefit

as a fiduciary." The probate court relied upon the case of *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 620 N.E.2d 966, in finding that the attorney fees were not a debt of the estate, since the actions of the attorneys and Rogers did not benefit the estate. It is from this order that Rogers appeals.

## II

Rogers's sole assignment of error is as follows:

"The lower court erred in finding that the attorney fees paid by the executrix, Rosemary Rogers, in defense of the action brought by certain beneficiaries were not properly paid from assets of the estate."

Rogers's contention that the trial court erred is premised upon her argument that, as executor, she had an obligation to present a defense to the complaint for breach of contract filed by James and Shirley, and that reasonable attorney fees for that defense were properly payable as an expense of the estate. She also argues that the trial court erroneously relied upon *Fugate* in determining that the attorney fees were not properly an expense of the estate.

James and Shirley, conversely, contend that the trial court properly denied the payment of the fees from assets of the estate. Their argument is fourfold. First, they claim that Rogers improperly incurred attorney fees. Second, they argue that R.C. 2107.75 does not provide a basis for the payment of attorney fees from estate assets under the facts of this case. Third, they similarly argue that R.C. 2113.36 does not authorize the payment of attorney fees. Finally, they argue that Rogers failed to challenge the validity of the antenuptial agreement within the required statutory time period and, therefore, was required to abide by its terms rather than to defend the testamentary intent expressed in the will after the breach of contract action was filed.

We begin our discussion first with Rogers's claim that she had a duty to defend the estate in the breach of contract action. As executor, Rogers had a duty to probate the will. R.C. 2107.09. The order probating the will created prima facie evidence of the validity of the will. R.C. 2107.74. It is presumed that the will was drawn in accordance with the wishes of the testator, and that it is the legal declaration of her intent. *Moon v. Stewart* (1913), 87 Ohio St. 349, 358, 101 N.E. 344, 346. Accordingly, the principal duty of Rogers was to accomplish the testator's purpose by protecting, preserving, and distributing the assets in accordance with the provisions of the will. *Hecker v. Schuler* (1967), 12 Ohio St.2d 58, 61, 41 O.O.2d 277, 278–279, 231 N.E.2d 877, 879–880.

The only allegations raised by James and Shirley consisted of claims that the testator, Catherine Dawson, had breached a contract. They did not contest the fact that the will admitted to probate was valid or that it expressed Catherine

Dawson's last wishes. No one alleged that Catherine Dawson lacked testamentary capacity or that the will was a product of undue influence. In fact, even if Catherine Dawson's actions "in making a new will and revoking the old, constitute[d] a breach of contract, [James and Shirley] had remedies at law or in equity, but the new will [was] not rendered invalid * * *. This is based upon the theory that a will made in pursuance of a contract is subject to revocation, and that actions for breach are not on the will itself but on the contract." Ohio Jurisprudence 3d (1981), Decedents' Estates, Section 502. In light of her duties as executor, and in the absence of any allegations as to the invalidity of the will, we conclude that it was incumbent upon Rogers as executor, under the facts of this case, to determine whether the antenuptial agreement in fact was valid, whether it had been revoked or modified, whether Dawson had breached the agreement, and whether there were any defenses to the action for breach of the agreement. We note that once the trial court found the agreement to be valid, Rogers abided by its terms and distributed the estate accordingly.

We also agree with Rogers's argument that the probate court erred by relying on *Fugate* in determining that the attorney fees were not payable from the estate. In *Fugate*, the attorney seeking payment of fees from estate assets was hired by beneficiaries to represent their interests against the estate. *Id.*, 86 Ohio App.3d at 295, 620 N.E.2d at 967, It is clear that the attorney in *Fugate* was not hired by the fiduciary or the estate. In this case, pursuant to the stipulations of the parties, the firm of Coolidge, Wall, Womsley & Lombard was hired by Rogers as executor. *Fugate* has no bearing on, and does not address payment of, attorney fees when the executor, rather than the beneficiaries, hires attorneys to accomplish the testator's purpose as set forth in her last will.

Further, it is also clear that the attorney in *Fugate* represented interests that were adverse to the estate. *Id.* at 296, 620 N.E.2d at 967–968, In this case, Rogers, in her role as executor, hired attorneys to represent the interests of the estate. There is nothing in the record, other than the mere fact that Rogers is a beneficiary under the will, to support the probate court's finding that Rogers's actions were adverse to the estate, or that she was protecting her interests by hiring an attorney to determine the validity of the antenuptial agreement. Instead, the record reflects that Rogers and the other beneficiaries hired a separate attorney to represent their interests as beneficiaries. We can envision a situation in which Rogers's personal interests would have been better served by a finding that Catherine Dawson died intestate, in which case, the entire estate, not just one-third, would have passed to Rogers and the other nieces and nephews. In other words, Rogers's interest would have been in finding the will to have been invalid, and then contesting the antenuptial agreement. Finally, we note that the mere fact that a fiduciary may also have an interest in an estate as a beneficiary

does not, without more, support a finding that the actions of the fiduciary are taken solely for her benefit as a beneficiary.

We next turn to the arguments raised by James and Shirley. We begin with the claim that Rogers improperly incurred attorney fees. First, they argue that this action is in the form of a will contest, and, thus, they appear to contend that the attorney fees are not payable; since Rogers was unsuccessful in defending the will. Second, they argue that Rogers had no duty to defend the will contest, since the Ohio Supreme Court has held that a "[a]lthough [a fiduciary] may defend the will, he is not required to do so and may cast the defense burden onto the legatees and devisees." *In re Estate of Zonas* (1989), 42 Ohio St.3d 8, 536 N.E.2d 642, Finally, they claim that the "proper position for the Executrix to take [is] one of a neutral party relying on the Court to determine how the funds should be distributed." We find these arguments to be without merit.

First, we need not decide whether the breach of contract action is analogous to a will contest. Even if it is, we would be constrained to conclude that attorney fees were properly payable. In the past, Ohio courts have held that attorney fees are not payable to the unsuccessful party in will contest actions. *Foltz v. Boone* (1923), 107 Ohio St. 562, 140 N.E. 761, However, the Ohio legislature, by enacting R.C. 2107.75, has modified the common law expressed in *Foltz v. Boone*. R.C. 2107.75 reads as follows:

"When the jury or the court finds that the writing produced is not the last will and testament or codicil of the testator, the trial court *shall* allow as part of the costs of administration such amounts to the fiduciary and to the attorneys defending such purported last will or purported codicil as the trial court finds to be reasonable compensation for the services rendered in such contest. The court shall order such amounts to be paid out of the estate of the decedent." (Emphasis added.)

Therefore, pursuant to R.C. 2107.75, payment of attorney fees is proper in will contest actions, even if the party defending the will is unsuccessful. *Estate of Kaziakos v. Georgekopoulos* (June 25, 1986), Summit App. No. 12426, unreported, 1986 WL 7502.

Second, James and Shirley are correct in their contention that the Supreme Court has held that a fiduciary does not have a duty to defend a will contest. *In re Estate of Zonas* (1989), 42 Ohio St.3d 8, 9, 536 N.E.2d 642, 643–644, citing *Executors of Andrews v. His Administrators* (1857), 7 Ohio St. 143. However, we note that there is no case law or statutory authority prohibiting the defense of a will contest; obviously the General Assembly, by the enactment of R.C. 2107.75, at least condones, if not encourages, the defense of will contests. It should be noted that while we read the statute as allowing an executor to defend

a will contest, we do not read it as condoning the actions of an executor who is obviously defending the will in an effort to benefit solely himself rather than the estate.

Further, a more complete reading of the holding in *Zonas* indicates that although a fiduciary has no duty to defend, he may nonetheless undertake to do so. *Zonas, supra*, 42 Ohio St.3d at 12, 536 N.E.2d at 645–646. Also, we conclude that an examination of the Supreme Court's reasoning behind the "no duty to defend" holding reveals that the holding was primarily intended to apply to fiduciaries who retain attorneys for their personal benefit rather than for the benefit of the estate:

"We determined that an executor did not have a duty to defend a will in a will contest and properly could put the burden of defense on the legatees and devisees under the contested will. We reasoned that if an executor had the duty to defend the will and thus was able to charge the defense expenses to the estate even when unsuccessful, this would result in ' * * * the obvious and gross injustice of exonerating from the burdens of the contest those who alone had an interest in maintaining it, and who are adjudged to have been in the wrong, and casting the whole expense of a proceeding, alike against their rights and their interests, upon the innocent heirs at law.' " *Id.* at 9, 536 N.E.2d at 643, quoting *Executors of Andrews v. His Administrators* (1857), 7 Ohio St. at 152.

■ Last, we address the argument that a fiduciary must remain neutral. If James and Shirley intend this argument to imply that a fiduciary must remain neutral in regard to all claims made against an estate, we disagree. Rogers, as executor, had certain duties that she was bound by law to perform. In order to perform those duties, she was obliged to determine whether the claim of James and Shirley was valid. We find this type of case to be similar to a claim filed against an estate for a debt owed by the decedent: a fiduciary cannot blindly pay a debt without first determining whether it is valid. If litigation ensues, unless the validity of the debt cannot reasonably be disputed, the fiduciary is obliged to defend the estate.

■ We agree that in general a fiduciary should remain neutral in disputes between beneficiaries. However, where, as here, the testamentary purposes of the decedent are manifest in a validly executed will, the fiduciary has a responsibility to make reasonable efforts to carry out those purposes.

We next turn to the claim that R.C. 2107.75 does not apply to this case. James and Shirley argue that R.C. 2107.75, which allows the costs of defending a will to be taxed to the estate, applies to fiduciaries and their attorneys, but does not apply to beneficiaries. They also argue that R.C. 2107.75 applies only when the retaining of counsel by the executor or administrator is necessary for the benefit

of the entire estate. James and Shirley claim that since Rogers is a beneficiary with a personal interest in the estate, and since the hiring of the attorneys was not beneficial to the entire estate, R.C. 2107.75 does not apply.

We agree that the Supreme Court has stated that R.C. 2107.75 applies when an executor employs counsel for the benefit of the entire estate. We also acknowledge that the court has specifically held that the statute applies only to fiduciaries. However, we do not agree that Rogers's actions were improper merely because she was also a beneficiary. It is a fact of life that persons who are appointed as fiduciaries under a will are many times also named as beneficiaries. The fact that a fiduciary is also a beneficiary should not be the sole determining factor in deciding whether his actions are taken for his personal benefit. In this case, there was no evidence that Rogers was merely trying to advance her personal interests rather than trying to determine whether the decedent's last wishes could be carried out. Further, there is evidence that Rogers was able to separate her personal interests as a beneficiary from her role as a fiduciary by the fact that she hired, and personally paid for, a separate attorney to represent her individual interests.

We next address James and Shirley's argument that R.C. 2113.36 does not apply to this case. Although it is not clear, they seem to argue that R.C. 2113.36, which covers attorney fees paid for more general services than under R.C. 2107.75, does not apply to cases in which the hiring of the attorneys does not benefit the estate as a whole. In support, James and Shirley rely upon *In re Estate of Fugate, supra*, and *In re Estate of Brown* (1992), 83 Ohio App.3d 540, 615 N.E.2d 319, However, we note that both of those cases are inapplicable to this case in that they both involve attorneys retained by beneficiaries rather than by the fiduciary.

R.C. 2113.36 reads, in pertinent part, as follows:

"When an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator *shall* be allowed as a part of the expenses of administration." (Emphasis added.)

We conclude that this statute has application in this case. It appears to us to be beyond dispute, based upon the facts of this case, that the proper administration of this estate required Rogers to retain counsel to represent the estate.

Finally, we need not address James and Shirley's contention that Rogers was required to challenge the antenuptial agreement within the time proscribed by R.C. 2106.22; that issue has not been properly raised on appeal.

■ Ordinarily, absent an abuse of discretion, a reviewing court will not substitute its judgment as to the reasonableness of allowing attorney fees. *In re Estate of Whitmore* (1983), 13 Ohio App.3d 170, 468 N.E.2d 769, Here, we conclude that the probate court did abuse its discretion, since it is clear that Rogers was obliged to determine whether the breach of contract claim could reasonably be defended and, if so, she was obliged to present a defense. Clearly, she could properly retain counsel to assist her in making the initial determination whether the breach of contract of claim could reasonably be defended. If it could be, she was entitled to retain counsel, at the estate's expense, to mount a defense. Questions concerning the reasonableness of the attorney fees expended for this purpose are properly confided to the sound discretion of the trial court.

Rogers's sole assignment of error is sustained.

## II

Rogers's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for a hearing as to the reasonableness of the requested attorney fees.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and FREDERICK N. YOUNG, J., concur.