[Cite as *My Father's House #1 v. McCardle*, 2013-Ohio-420.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### MARION COUNTY

MY FATHER'S HOUSE #1, INC.,
ET AL.,

    **PLAINTIFFS-APPELLANTS,**           CASE NO. 9-11-35

    v.

H. MICHAEL McCARDLE, ET AL.,         O P I N I O N

    **DEFENDANTS-APPELLEES.**

---

**Appeal from Marion County Common Pleas Court**
**Probate Division**
**Trial Court No. 08 CIV 51666**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: February 11, 2013**

---

**APPEARANCES:**

    *Richard Kolb* **for Appellants**

    *George Q.B. Vaile* **for Appellees**

    *Andromeda McGregor* **Attorney for State of Ohio, ex rel.**

**PRESTON, J.**

{¶1} Plaintiffs-appellants, My Father's House #1, Inc. and Lois Beringer, appeal the Marion County Court of Common Pleas, Probate Division's judgment determining that appellants lacked standing to challenge Donald Beringer's conveyance of his real property to defendants-appellees, Michael and Lynda McCardle.  Appellants claim the trial court erred by piercing the corporate veil to determine My Father's House and Lois operated as one and the same entity, and erred by deciding that they both lacked standing as a result of Lois' antenuptial agreement with Donald.  For the reasons that follow, we affirm in part and reverse in part.

{¶2} On April 2, 1996, Donald and Lois entered into an antenuptial agreement enabling them to pass their respective estates without any marital claims, but permitting them to make gifts or bequests to each other.  (Antenuptial Agreement, Joint Ex. 1).  Donald and Lois were subsequently married.  (Oct. 27, 2010 Tr. at 254).

{¶3} Donald and Lois filed incorporation papers for My Father's House, the church they operated, on or after December 30, 2000.  (Pl. Ex. 11).  The name of the church was originally My Father's House Full Gospel Fellowship.  (*Id*.).  In 2005, Donald and Lois changed the church's name to My Father's House #1, Inc.  (Oct. 27, 2010, 2011 Tr. at 270).

{¶4} On July 28, 2005, Donald signed a will that primarily left his real property to named trustees for the benefit of My Father's House. (2005 Will, Joint Ex. 2). Donald also made a small life estate bequest to Lois. (*Id*.). On November 28, 2006, Donald signed a second will, which left all of his assets to Michael, Lois' foster child. (2006 Will, Pl. Ex. 4).

{¶5} On September 18, 2007, Donald conveyed 31 acres of land to Michael and his wife, Lynda. (Quit Claim Deed, Pl. Ex. 6). Lois signed off any dower interest in the property. (*Id*.).

{¶6} On December 12, 2007, Donald signed a transfer on death deed to Michael for the remainder of his farm, which consisted of approximately 175 acres. (Transfer on Death Deed, Pl. Ex. 7). Lois again signed off any dower interest. (*Id*.). Donald died on June 26, 2008. (Oct. 27, 2010 Tr. at 324).

{¶7} On November 14, 2008, Lois and My Father's House filed a complaint in the Marion County Court of Common Pleas, Probate Division, against: (1) Michael and Lynda, the primary beneficiaries under Donald's will, (2) Michael, as the executor of the will, (3) Laura Leigh Elsrod, the contingent beneficiary under Donald's will, (4) Brent Harraman, the attorney that prepared the will, and (5) the Ohio attorney general, as statutorily required. (Doc. No. 1). Lois and My Father's House contested the validity of Donald's 2006 will. (*Id*.).

{¶8} On December 8, 2008, the Ohio attorney general filed an answer to the complaint. (Doc. No. 10). On January 10, 2009, Harraman filed his answer to the complaint. (Doc. No. 14). On March 16, 2009, Michael and Lynda filed their answer asserting, among other things, that Lois and My Father's House lacked standing, that My Father's House was Lois' alter ego, and that My Father's House was not a legitimate legal entity. (Doc. No. 16).

{¶9} On April 16, 2009, the trial court dismissed Elsrod as a party to the proceedings. (Doc. No. 18). On January 19, 2010, the trial court dismissed Harraman as a party to the case. (Doc. No. 30).

{¶10} On January 12, 2010, Lois and My Father's House filed a motion for leave to file an amended complaint. (Doc. No. 27). On February 12, 2010, Michael and Lynda filed a memorandum in opposition of appellants' motion to file an amended complaint and a motion to dismiss the complaint. (Doc. No. 33). On February 19, 2010, the trial court granted appellants leave to file an amended complaint. (Doc. No. 35). Appellants filed an amended complaint and jury demand on February 19, 2010, asserting the conveyance of the deeds was also invalid. (Doc. No. 36).

{¶11} The Ohio attorney general filed its second answer on February 25, 2010. (Doc. No. 39). Michael and Lynda filed their second answer on March 5, 2010. (Doc. No. 42).

{¶12} The trial court held hearings on the issue of Lois and My Father's House's standing on October 27, 2010 and February 7, 2011, after the parties had submitted pre-hearing briefs on the issue. (Doc. Nos. 54, 55, 56, 63, 94). The parties subsequently submitted briefs to the trial court again addressing the standing issue. (Doc. Nos. 83, 86, 87, 88, 91, 92). On May 2, 2011, the trial court issued its judgment entry determining both Lois and My Father's House had standing to challenge Donald's will, but neither Lois nor My Father's House had standing to challenge the real estate transfers to Michael. (Doc. No. 94).

{¶13} On May 27, 2011, Lois and My Father's House filed a notice of appeal. (Doc. No. 112). On June 20, 2011, this Court dismissed the appeal for lack of a final, appealable order. (Doc. No. 117).

{¶14} On August 3, 2011, the trial court issued a second judgment entry dismissing Lois and My Father's House's claim that the deed transfer was invalid and certifying that its judgment was a final, appealable order. (Doc. No. 120). On August 16, 2011, Lois and My Father's House filed a second notice of appeal. (Doc. No. 121). Appellants now raise one assignment of error for our review.

### Assignment of Error

**The trial court erred in finding that Plaintiffs, My Father's House #1, Inc. and Lois Beringer, lacked standing to challenge the real estate transfers.**

{¶15} In their sole assignment of error, appellants argue the trial court erred by finding that Lois and My Father's House lacked standing to challenge Donald's conveyance of his real property to Michael. Appellants contend that they do have standing to challenge the transfer because they were beneficiaries under Donald's original will. Appellants argue that, as a result, the trial court erred in determining Lois lacked standing based on the antenuptial agreement. Appellants further contend that the trial court erred by deciding that Lois and My Father's House "operated as one and the same," and since Lois did not have standing to challenge the conveyance, My Father's House also lacked standing.

{¶16} As a preliminary matter, we must determine the appropriate standard of review. The trial court considered the issue of appellants' standing in response to Michael's motion to dismiss. (Doc. No. 33). However, it is clear the trial court treated Michael's motion to dismiss as a motion for summary judgment. First, standing is an affirmative defense. *Everhome Mortgage Co. v. Behrens*, 11th Dist. No. 2011-L-128, ¶ 12 (March 30, 2012). As an affirmative defense, the issue of standing is more appropriately raised in a motion for summary judgment. *Goodwin v. T.J. Schimmoeller Trucking*, 3d Dist. No. 16-07-08, 2008-Ohio-163, ¶ 10. Second, if the trial court wishes to consider evidence outside of the pleadings on a motion to dismiss, the court must convert the motion to a motion for summary judgment and provide the parties with an opportunity to present the

pertinent materials.  *Id.*, citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 470 (1998); Civ.R. 12(B).  In the present case, the parties submitted pre-hearing briefs regarding the standing issue, submitted evidence during a two-day hearing, and submitted post-hearing briefs on the issue.  (Doc. Nos. 54, 55, 56, 63, 64, 66, 83, 86, 87, 88, 91, 92).  The trial court thus considered evidence outside of the pleadings, and the parties had ample opportunity to present the relevant materials.  Consequently, we will review the trial court's judgment as we would a ruling on a motion for summary judgment.

{¶17} We review a decision to grant summary judgment de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000).  Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶18} A plaintiff must have standing to assert a claim against a defendant. *Camp St. Mary's Assn. of the West Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, ¶ 13 (3d Dist.).  In order to have standing, a party must have an actual or imminent injury, there must be causal connection between the injury and the conduct the party is

addressing, and the court must be capable of redressing the injury with its decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Thus, "the injury must be traceable to the challenged action, and the injury must likely be redressed by a favorable decision." *Ahrns v. SBA Communications Corp.*, 3d Dist. No. 2-01-12, *2 (Sept. 28, 2001), citing *Eng. Technicians Assn. v. Ohio Dept. of Transp.*, 72 Ohio App.3d 106, 110-111 (10th Dist.1991). Additionally, a nonprofit corporation may sue and be sued. R.C. 1702.12(A).

{¶19} We must examine each of Lois and My Father's House's claims to determine whether they have standing. Lois and My Father's House argue they have standing to challenge Donald's transfer of the deeds to Michael because they were beneficiaries of Donald's property under his 2005 will. R.C. 2107.71 permits "a person interested" in the will to challenge the will. *In re Estate of Scanlon*, 8th Dist. No. 95264, 2011-Ohio-1097, ¶ 12. An interested person is "'any person who has such a direct, immediate and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefitted by setting aside the will.'" *Id.*, quoting *York v. Nunley*, 80 Ohio App.3d 697 (8th Dist.1992).

{¶20} In the present case, Donald's 2005 will granted Lois the right to live in Donald's home on Newmans-Cardington Road for as long as she chose. (Joint

Ex. 2). The will did not grant Lois the right to assign or transfer her interest in the home. (*Id*.). The will further granted Lois the right to use Donald's miscellaneous household goods, furnishings, and farm equipment. (*Id*.). Donald's 2005 will also granted My Father's House's trustees the real property on Newmans-Cardington Road and the real property on Merkle Avenue. (*Id*.). The will created a charitable trust and directed the nominated trustees to use Donald's real and personal property for the benefit of My Father's House. (*Id*.). The trial court determined that Lois and My Father's House had standing to challenge the 2007 will because they were beneficiaries under the 2005 will, but did not have standing to challenge the subsequent deed transfers. (Doc. No. 94).

{¶21} Lois and My Father's House argue that they also have the right to contest the deed transfers because they had a right to the real property under the 2005 will. Appellants contend that Michael fraudulently induced Donald to alter his will and convey his property to Michael under the belief that Michael would use it for the church's benefit. Appellants argue that Donald left them his real property in his 2005 will, and if Michael acted fraudulently as they allege, the 2007 will and subsequent deed transfers are invalid. In that case, appellants contend they have the right to the real property. Michael argues that appellants lack standing because Lois signed an antenuptial agreement preventing her from claiming any marital property, and My Father's House is an invalid corporation.

Michael also contends that the trial court correctly concluded My Father's House lacked standing because it and Lois are "one and the same." We agree that Lois lacks standing as a result of the antenuptial agreement, but disagree that My Father's House lacks standing. We will now address each argument in turn.

### 1. Antenuptial Agreement

{¶22} Appellants argue the trial court erred by determining Lois lacks standing because she signed an antenuptial agreement disclaiming any right to Donald's property. The Supreme Court of Ohio has defined an antenuptial agreement as "a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage whereby the property rights and economic interest of either the prospective wife or husband, or both, are determined and set forth in such instrument." *Gross v. Gross*, 11 Ohio St.3d 99, 102 (1984). Antenuptial agreements are contracts. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 14, citing *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 466 (1994). Consequently, the law of contracts applies to their interpretation and application. *Wolf-Sabatino* at ¶ 14, citing *Fletcher* at 466. The court will presume the contract's language represents the parties' intent. *Wolf-Sabatino* at ¶15, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974).

{¶23} In the present case, Donald and Lois entered into an antenuptial agreement that allowed them to pass their estates free from marital claims, but also

permitted them to make gifts or bequests to each other. (Joint Ex. 1). Section 1a of the agreement explicitly states, "[t]he surviving party shall not present, make, or assert any claim or right whatsoever to share or participate in any matter in the other party's estate." (*Id.*). Section 3 of the antenuptial agreement further provides that "[e]ach party may freely make such disposition of his/her property of whatever kind or nature, acquired before or during the parties' marriage, by sale, gift, will, or otherwise during his/her lifetime as he/she may desire." (*Id.*). During the trial court's hearing, the parties also stipulated that the antenuptial agreement is a valid, enforceable contract that gave Donald the right to transfer his real property free of any claim from Lois. (Feb. 7, 2011 Tr. at 16).

{¶24} After reviewing the record, we agree with the trial court that the antenuptial agreement permitted Donald to transfer his real property to whomever he chose. (Joint Ex. 1). Consequently, we cannot find that Lois now has standing to assert a claim that Donald's transfer to Michael was invalid. Since Lois agreed to permit Donald to transfer the property to whomever he chose, she did not suffer any injury when he exercised that right. Furthermore, this Court cannot find any legal support for Lois' contention that she has a claim to the property based on Donald's 2005 will, even though that claim conflicts with the antenuptial agreement. *See In re Estate of Dawson*, 117 Ohio App.3d 51 (2d Dist.1996) (Antenuptial agreement required the testator to bequeath her entire estate to her

stepchildren; however, by her will, she divided the estate between her stepchildren, nephews, and nieces. Antenuptial agreement was upheld.).

{¶25} The dissent argues that because the will in question was subsequent to the antenuptial agreement, R.C. 2107.71 grants Lois standing to challenge the will as a beneficiary. We disagree. In the antenuptial agreement, Lois agreed not to "present, make, or assert any claim or right whatsoever to share or participate in any matter in the other party's estate," which is what she now attempts to do by challenging Donald's bequest to Michael. (Joint Ex. 1). Furthermore, the antenuptial agreement specifically permits the parties to dispose of their property by will, and does not contain any provisions preventing them from making bequests to each other. (*Id*.). The antenuptial agreement thus authorizes the parties to leave their property to anyone, including the surviving spouse, but still prevents the surviving spouse from asserting any other claims to the estate. (*Id*.). Granting Lois standing pursuant to R.C. 2107.71 is in direct contradiction with section 1a of the antenuptial agreement prohibiting Lois from making such a claim. As a result, we conclude that Lois' antenuptial agreement with Donald prevents her from having standing to contest his subsequent deed transfers.

## 2. Piercing the Corporate Veil

**{¶26}** Appellants next argue that the trial court erred by determining that since Lois lacked standing, My Father's House also lacked standing because they "operated as one and the same." In its judgment entry, the trial court stated:

> While this Court recognizes that My Father's House, #1, Inc. is a separate legal entity from Lois Beringer in the eyes of the law, it is clear based upon how My Father's House, #1, Inc. was incorporated and conducted business, this corporate entity and Lois Beringer operated as one and the same. This is evidenced in every aspect of the corporation's affairs operated solely under the direction and approval of Lois Beringer.

(Doc. No. 94). The trial court thus determined that My Father's House lacked standing because although it was a separate legal entity from Lois, it did not operate as a separate entity. Appellants argue this language indicates the trial court decided My Father's House was Lois' alter ego, and that the trial court incorrectly pierced the corporate veil to determine My Father's House lacked standing.

**{¶27}** It is well settled that a corporation is a separate legal entity from its shareholders, even when the corporation only has one shareholder. *LeRoux's Billyle Supper Club v. MA*, 77 Ohio App.3d 417, 421 (6th Dist.1991), citing *First*

*Natl. Bank of Chicago v. Trebein Co.*, 59 Ohio St. 316 (1898). "Nevertheless, in certain circumstances, courts can 'pierce the corporate veil,' that is, disregard the corporate entity, and treat the shareholder and his corporation as a single entity." *LeRoux's* at 421, citing *E.S. Preston Assoc., Inc. v. Preston*, 24 Ohio St.3d 7, 11 (1986). The Supreme Court of Ohio has adopted a three-pronged test to determine when a court should pierce the corporate veil. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274 (1993). According to the *Belvedere* test, a court may pierce the corporate veil when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id*. at paragraph three of the syllabus. The Supreme Court of Ohio subsequently clarified that the second prong of the *Belvedere* test refers specifically to fraud or illegal acts, rather than unjust or inequitable acts that do not rise to the level of fraud. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 18 ("To fulfill the second prong of the *Belvedere* test for piercing the corporate veil,

the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act."). All three prongs of the test must be met for the court to pierce the corporate veil. *State ex rel. Cordray v. U.S. Technology Corporation*, 5th Dist. No. 11AP060025, 2012-Ohio-855, ¶ 19.

**{¶28}** The first prong of the *Belvedere* test is essentially the "alter ego doctrine." *Pottschmidt v. Thomas J. Klosterman, M.D., Inc.*, 169 Ohio App.3d 824, 2006-Ohio-6964, ¶ 37 (9th Dist.). A corporation is an individual's alter ego when "the individual and the corporation are fundamentally indistinguishable." *Belvedere* at 288. "Some of the factors used to determine if this standard has been met include (1) whether corporate formalities were observed, (2) whether corporate records were kept, (3) whether corporate funds were commingled with personal funds, and (4) whether corporate property was used for a personal purpose." *Pottschmidt* at ¶ 37, citing *LeRoux's Billyle Supper Club*, 77 Ohio App.3d at 422-423.

**{¶29}** In the present case, Michael presented evidence indicating that Lois comingled funds and failed to observe the corporate formalities. (Oct. 27, 2010 Tr. at 26, 79, 263, 280). However, all three prongs of the *Belvedere* test must be met to pierce the corporate veil. *Cordray*, 5th Dist. No. 11AP060025, 2012-Ohio-855 at ¶ 19. Even assuming Michael demonstrated that My Father's House

functioned as Lois' alter ego, Michael failed to provide any evidence regarding the remaining two prongs of the *Belvedere* test by demonstrating Lois exerted her control to commit fraud or an illegal act, and that Michael was injured by Lois' wrongful act. Since all three prongs of the *Belvedere* test were not met, the trial court erred by piercing the corporate veil. *Id.*

### 3. Corporation's Validity

**{¶30}** Michael argues that even if the trial court erred by determining My Father's House lacked standing because it is Lois' alter ego, My Father's House still lacks standing because it is an invalid legal entity. Michael contends that My Father's House submitted invalid articles of incorporation, has failed to adhere to the corporate formalities, and lost its corporate status, so it does not have standing to bring the suit.

**{¶31}** R.C. 1702.53(A) states:

A copy of the articles or amended articles filed in the office of the

secretary of state, certified by the secretary of state, shall be

conclusive evidence, except as against the state, that the corporation

has been incorporated under the laws of this state, and a copy duly

certified by the secretary of state of any certificate of amendment or

other certificate filed in the secretary of state's office shall be prima-

facie evidence of such amendment or of the facts stated in any such

certificate, and of the observance and performance of all antecedent conditions necessary to the action which such certificate purports to evidence.

Once a corporation is established, it continues to exist until it is dissolved. *Athens Cty. Property Owners Assn., Inc. v. City of Athens*, 4th Dist. No. 1482, *2 (Aug. 26, 1992).

**{¶32}** Appellants submitted a copy of My Father's House's articles of incorporation as well as a certification from the secretary of state that it is a corporation in good standing to the trial court. (Pl. Exs. 11, 11A). There is nothing in the record to indicate that My Father's House was voluntarily dissolved pursuant to R.C. 1702.47 or judicially dissolved pursuant to R.C. 1702.52. Additionally, no evidence of the secretary of state cancelling My Father's House's corporate status was presented to the trial court. Our review is limited to the record that was before the trial court; consequently, we cannot consider Michael's additional evidence that My Father's House's corporate status was cancelled. *Wedemeyer v. U.S.S. F.D.R. (CV-42) Reunion Assoc.*, 3d Dist. No. 1-09-57, 2010-Ohio-1502, ¶ 44. Appellant's articles of incorporation and certificate of good standing are thus conclusive evidence pursuant to R.C. 1702.53(A) that My Father's House was incorporated. As a corporation that was a beneficiary of Donald's real property under his 2005 will, My Father's House suffered an injury

by Donald's conveyance of the property to Michael. That injury could be remedied were the trial court to determine that the 2007 will and subsequent conveyances were invalid; consequently, My Father's House has standing to challenge the deed transfers.

{¶33} For the aforementioned reasons, the trial court did not err by determining Lois lacked standing to challenge the deed transfers to Michael but did err by determining My Father's House lacked standing to challenge the transfers.

{¶34} Appellants' assignment of error is sustained to the extent expressly stated in this opinion.

{¶35} We, therefore, affirm the judgment of the trial court as to Lois Beringer, but we reverse the judgment of the trial court as to My Father's House #1, Inc. as it pertains to the challenge of the real estate transaction and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW, P.J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Dissenting in Part and Concurring in Part.**

{¶36} I concur in the portion of the judgment which reverses the judgment of the trial court as to the standing of My Father's House. However, I dissent from the majority as to the affirmation of the judgment as to Lois. Due to the antenuptial agreement I agree that Lois is unable to challenge the will in her capacity as the surviving spouse of Donald. I also agree that the antenuptial agreement would prohibit Lois from taking against the will and thereby collecting up to one half of the net estate or exercising any of the other statutory rights of a surviving spouse granted pursuant to R.C. 2106. If that was the only way that Lois had standing, I would concur fully with the majority. It is not. In addition to being the surviving spouse, Lois was also a beneficiary of the will. Lois was to inherit a life estate pursuant to the terms of the will. A life estate is an asset that has value. See *Cook v. Ohio Dept. of Job and Family Services*, 4th Dist. No. 02CA22, 2003-Ohio-3479; OAC 5101:1-39-32(E) (identifying life estates as resources for Medicaid purposes); and *Holdren v. Holdren*, 78 Ohio St. 276 (1908).

{¶37} An antenuptial agreement is merely a contract by the parties that limits the marital rights. *Gross v. Gross*, 11 Ohio St.3d 99 (1984). Like any other contract, an antenuptial agreement can be modified. It is not a document that

-19-

controls all future documents and prohibits one spouse from later giving rights to the other.

**{¶38}** Here, the will was made by the testator **AFTER** the antenuptial agreement. This makes a tremendous difference. Although Donald knew that by virtue of the antenuptial agreement Lois had no intestate rights as a surviving spouse, he chose to name her as a beneficiary of his will. Since it was made subsequent to the antenuptial agreement, it gives Lois rights that she would otherwise not have. She does not have the rights because of her status as a surviving spouse. She does however have these rights due to her status as a beneficiary under the will, which status was granted to her by the testator subsequent to the antenuptial agreement.

**{¶39}** R.C. 2107.71 sets forth who has standing to contest the validity of a will. The statute provides that the persons interested in a will that has not been previously declared valid may challenge the validity of the will filed. R.C. 2107.71(A). An interested party is one who has a direct, pecuniary interest in the estate of the testator that would be defeated by the admission of the instrument challenged. *Steinberg v. Central Trust Co.*, 18 Ohio St.2d 33 (1969). Any person who has a direct, immediate and legally ascertainable pecuniary interest in the will that would be benefitted by the setting aside of the will is a person of interest. *Donovan v. Decker*, 98 Ohio App. 183 (2d Dist. 1953).

**{¶40}** As discussed above, Lois is a beneficiary under the will with a pecuniary interest that would be benefited by the setting aside of the will being challenged. This makes her an interested party under R.C. 2107.71. For the same reason that My Father's House has the right to challenge the will due to its status as a beneficiary, Lois also has the right to challenge the will. To treat them differently ignores the intent of the testator, i.e. Donald, to provide the life estate for Lois. Since the will was made after the antenuptial agreement, its distribution to named beneficiaries is not affected by the antenuptial agreement. Instead, it gives Lois a second type of standing, the standing of a specifically named beneficiary.

**{¶41}** A testator can give the status of beneficiary to anyone, including a complete stranger. Donald gave such status to Lois. Beneficiary status is completely separate from Lois' status as spouse. To find because Lois is the spouse who gave up her spousal rights to take against the will via the antenuptial agreement that she also gave up her rights as a specifically named beneficiary in a subsequently drafted will would be to place her in a lower position than even a complete stranger.

**{¶42}** The majority is focused on the *Dawson* case to claim that the prior antenuptial agreement terminates Lois' standing to challenge the new will. However, the *Dawson* case does not stand for this proposition. In *Dawson*, the

-21-

parties entered into an antenuptial agreement. Part of the antenuptial agreement contained a provision requiring mutual wills in which the husband would place his entire estate into a trust. *Dawson, supra* at 53. The wife then was given the use and benefit of the trust assets and the husband's home until she either remarried or died. *Id.* at 54. In exchange, the wife agreed that upon her death, her will would leave her entire estate to her step-children. *Id.* The husband died in 1985. In 1990, the wife executed a new will that left part of her estate to her nieces and nephews as well as her step-children. The step-children contested the new will. Upon review, the court held that due to the antenuptial agreement, the entire estate belonged to the step-children and invalidated the new will. The dispute before the appellate court in *Dawson* was whether the executor could require the estate to pay the attorney fees for defending the will that was declared invalid. The appellate court upheld the payment of the fees pursuant to a statutory provision. That is not the dispute in this case.

{¶43} Unlike the antenuptial agreement in *Dawson*, the antenuptial agreement in this case provides that both parties may distribute their estates at they wish. The majority concedes that this allows the testator to name Lois as a beneficiary under the will without violating the terms of the antenuptial agreement. However, they argue that it prevents her from challenging the validity of the newest will. I disagree. Another way of looking at the question raised is to

ask what affect the antenuptial agreement has on the will itself. Assuming for the sake of argument that the newest will was procured through fraud, it would be invalid. Then Lois would have been a beneficiary under the former (post antenuptial) will *even with the antenuptial agreement in place*. The antenuptial agreement would have no effect on her status as a beneficiary. She would be allowed to inherit. Since the antenuptial agreement would not affect her status as beneficiary absent the newest will, it is illogical to argue that it affects her status as beneficiary under the former (post antenuptial) will when it comes to challenging the validity of the newest will.

{¶44} Finally, if the logic of the majority is followed, a party could conceivably commit a fraud and leave a named beneficiary under a prior will with no legal remedy. If Donald had chosen to leave all of his estate to Lois and not just a life estate, she would inherit fully, even with the antenuptial agreement. If then a party had procured a new will through the use of fraud or undue influence which excluded Lois from inheritance, the logic of the majority's opinion would be that no one would have standing to challenge the will. This is not the intent of the statute and would certainly be against public policy.

{¶45} Thus, I would find that in addition to My Father's House, Lois has standing as well. I would reverse the matter for further proceedings.